## ROGERS *v.* BOWEN.

The language of the first section of the act of December 28, 1844, is to be construed as including assessments made for taxes raised to pay for erections and repairs of school-houses already completed, as well as those in terms required to be made for taxes raised for building and repairing such houses.

By the provisions of that section, it is not imperative upon the selectmen to make a new invoice for the assessment of school-house taxes, even when changes in the ownership of property within the district, occurring between the taking of the annual invoice, on the first day of April, and the making of such assessment, shall have come to their knowledge.

As a justification for assessing a school-house tax, selectmen are bound to show the legality and validity of the proceedings of the meeting of the school district at which it was voted to be raised, by the records of the district; or, if the records be lost, by secondary evidence of their contents.

TRESPASS, to recover the value of a wagon, alleged to have been the property of the plaintiff, and to have been

Rogers *v.* Bowen.

taken by the defendants, and converted to their own use. Plea, the general issue, with a brief statement that the defendants were selectmen of the town of Swanzey, and assessed a tax against the plaintiff, and put the warrant for its collection into the hands of one D. C. Howard, collector of said town, who, after notifying the plaintiff thereof and requesting payment, which was refused, took and sold the wagon to satisfy said tax and costs.

The plaintiff offered evidence that he was the owner of the wagon in question, and that Howard took it from his possession and disposed of it against his will; that Howard seized it under the authority of a selectmen's warrant for the collection of a school-tax for paying for a school-house and fencing, assessed against the plaintiff, which warrant was in the usual form, and was signed by the defendants, as selectmen of said town.

The defendants offered evidence that they were chosen selectmen of Swanzey for the year 1858, the year when the wagon was taken, and were duly qualified; that in the month of April they took an invoice of the town, on which the ordinary taxes were assessed, and that at that time the plaintiff consented to be taxed for the property, being real estate, on which the school-house tax was afterward assessed. The records of the school district were not produced to show that any school-house tax had been voted by the district; but, the original being lost, the defendants produced from the records of the town what purported to be a certified copy of certain doings of the district as follows: to wit,

"To the selectmen of the town of Swanzey: I hereby certify that at a meeting of the legal voters of school district No. 11, in said town, duly warned and holden, pursuant to notice, at the school-house in said district, on May 6th, 1858, the following vote was passed: Notice that the district raise the sum of two hundred and twenty-five dollars, for the purpose of paying for school-house

and fencing in said district, to be paid by the first of October next.

ALFRED SEAVER, Clerk of said District.

Swanzey, May 11th, 1858."

Said Seaver testified that he acted as clerk of said district in 1858, and that he left with the selectmen, on or about the 11th day of May, the original certificate. The plaintiff objected to the competency of the foregoing evidence; and he further objected, that, if admissible, it did not authorize the defendants to assess the school tax. But the objections were overruled and the evidence admitted. The defendants further offered evidence that the school tax was assessed by them on the 25th day of May, 1858, on the April invoice, to raise the sum of two hundred and twenty-five dollars, and that the plaintiff was taxed for the same property that was invoiced to him in the preceding April, which was the same tax committed to Howard for collection.

It appeared that, before the taking of the wagon, the plaintiff had paid all taxes assessed against him, except that on the real estate in question; that by the death of a Mrs. Rogers, just before the first of April, 1858, this property had been left to her heirs; that the plaintiff was one of several children of Mrs. Rogers, they all being of age at that time, and being mostly out of district No. 11; that no administration was taken on her estate; that the property was not occupied from the death of Mrs. Rogers until the 24th day of April, 1858, when it was sold by the heirs, and conveyed to sundry purchasers by deed, and that the funds received in payment had been distributed among the heirs prior to May 6th. It further appeared that the selectmen were informed by the plaintiff that there had been a change in the occupancy of another piece of real estate in the district subsequent to the first of April, which the person paying the assessed tax claimed should not be taxed to him in May (which, being objected

to, was ruled in, subject to exception), and also of the sale of the Rogers property prior to the assessment of the school tax; and that the plaintiff declined to be taxed for the property in question before the assessment in May. This property was situated in district No. 11. The court ruled that a new invoice of the property in said district should, under the above circumstances, have been made by the selectmen in May, on which to assess the school-house tax. The defendants excepting, a verdict having been returned for the plaintiff, the defendants moved that the same be set aside and a new trial granted.

*F. F. Lane*, for the defendants.

*Wheeler & Faulkner*, for the plaintiff.

FOWLER, J. By the first section of the act of December 28, 1844, Laws of November Session, 1844, Comp. Laws, 174, ch. 148, the selectmen in the several towns and places in this state, when, for the purpose of building and repairing school-houses it shall become necessary, are authorized to make a new invoice of all the property of the district, in order to make a just assessment of the taxes necessary to be raised for those objects. This chapter was in amendment of section 9 of chapter 71 of the Revised Statutes, which provided for the taxation of every person in the school district in which he lived, for his poll, and all the personal estate he held in town, and of all the real estate within the district, to raise money to build, purchase, repair, alter or remove a school-house and other necessary buildings for said district, with a lot on which to locate them, and to furnish the same with all necessary apparatus and furniture for the use of the school therein; and we have no doubt the amendment is to be regarded as coextensive in its operation with the section it modifies; so that it is wholly immaterial whether the

tax is required to be made in terms for building and repairing school-houses, or to pay for erections and repairs already made.

The question then arises whether, if the defendants were required to assess the tax in controversy in the present case, they were also required, under the circumstances disclosed upon the trial, to assess it upon a new invoice, made for the purpose, or were at liberty, in their discretion, to make the same upon the invoice taken upon the first of April previous. The plaintiff, being one of the owners of the real estate for which the tax was assessed, had authorized the defendants to tax it to him in that invoice; but before the school-house tax was voted, he had disposed of all his interest in it, as had also those who were his co-tenants on the first of April, and the property had passed into other hands. Notice of this change in the situation and ownership of the property was given to the defendants by the plaintiff, and he also expressly notified them that he declined to be taxed for it in this assessment. Is it clear that here was such a necessity for a new invoice, in order to secure a just assessment of the tax to be raised, as imperatively required the defendants to make a new invoice? We think not, for although the tax was voted after the plaintiff had parted with his interest in the land, it appears to have been voted to pay for a school-house and fencing before erected and built; and the defendants might well enough have considered it more just and equitable, under the particular circumstances, that the plaintiff, as representing the former owners of the property, should be held to pay it, than the recent purchasers. They might have regarded the proportion of the debt of the district, which the tax was assessed to pay, as in the nature of an incumbrance or mortgage upon the land, which it was more just and equitable for the former owners to remove, than for innocent purchasers without notice to be compelled to pay. If

Rogers *v.* Bowen.

those purchasers were strangers, ignorant in fact of the existence of the debt, this would clearly be so; because in such case, the vendors might fairly be presumed to have received, in the increased price of the land, resulting from the existence of new or improved facilities for education, a full equivalent for their equal portion of the debt incurred to secure them.

It is a well established rule in the construction of statutes, that the word "*may*" is to be construed "*shall*," whenever, in determining the extent or necessity of an exercise of authority, the interest of the public or of individuals requires such a construction. The same principle is perhaps sometimes applicable to other words of similar import; but we have no hesitation in holding that the statute of 1844 is not to be construed as requiring selectmen of towns to assess taxes for school-house purposes upon a new invoice of the property of the district taken for that purpose, whenever there have been changes in the ownership of the property liable for their payment, and such changes are brought to their knowledge. It would seem quite strange, if the legislature intended to require them to do this, that they should not have used language indicating clearly and distinctly that intention; since it is hardly possible to conceive of a case where a school-house tax is assessed after the first day of May, in a school-district of any considerable extent, where greater or less changes in the ownership of property within the district must not have come to the knowledge of the selectmen or assessors. In some of our cities and large towns, three fourths and more of the entire taxable property is included within the limits of a single school district; and scarcely a day could elapse wherein a considerable amount of the property in such a district would not change ownership, and if real estate, notice of such change would come to the selectmen or assessors through the public records; so that, whenever a school-house tax

Rogers v. Bowen.

was to be assessed after the first day of April, a new invoice would be indispensable. This condition of things must have been known and understood by the legislature, and if they had designed to make the taking of a new invoice in all such cases imperative, they would hardly have employed words which, in their ordinary signification, vest the assessors with a discretion in the matter.

It is not necessary for the decision of the present case, to determine the sufficiency of the evidence offered by the defendants, to justify them in assessing the tax in controversy, but we have no doubt it was entirely insufficient. It is the duty of selectmen, before making an assessment, to ascertain whether or not the proceedings of the meeting at which the tax was voted, were regular and legal; and if they were not, they make the assessment at their own risk. Whenever the validity of the assessment is called in question, they must show, for their justification in making it, a legal and binding vote of the district properly constituted, to raise the money for some legitimate purpose, or they will be held as wrong-doers. The certified copy of the vote raising money, required to be furnished to the selectmen by the clerk of the district within ten days after its passage, is only a notice to the selectmen that their action is required in assessing the tax, but is not in itself sufficient to justify their action, which must rest on the regularity and validity of the proceedings of the meeting of the district at which the vote was adopted. They have thirty days, after receiving the copy, in which to investigate and determine the legality of the vote, and are bound to make such investigation at their peril. If there were no legally constituted district, or if the meeting were not properly notified, or there were nothing in the warrant to authorize the vote, or the money were raised for an illegal or unauthorized purpose, they are not required to make the assessment, and, if they do make it, must be held responsible therefor. *Bump* v.

*Smith,* 11 N. H. 48; *School District No.* 1 *in Greene* v. *Bailey,* 3 Fairf. 254; *Johnson* v. *Dole,* 3 N. H. 328; S. C. 4 N. H. 478; *Waters* v. *Daines,* 4 Vt. 601; *Bates* v. *Hazeltine,* 1 Vt. 81; *Blake* v. *Sturtevant,* 12 N. H. 567.

In order to justify themselves in the case before us, the defendants were bound to show the legality and validity of the proceedings of the meeting at which the tax assessed by them was voted to be raised, by the records of the district, or, in case of their loss, by secondary evidence of the contents of those records. The clerk's certificate of the legality of those proceedings was not competent for that purpose. The ruling of the court below on this point was therefore erroneous.

In accordance with these views, the verdict for the plaintiff must be set aside, and a new trial be granted.

*Exceptions sustained.*